COZEN O'CONNOR
CHRISTOPHER C. FALLON, JR. (CF 9482)
45 Broadway, 16th Floor
New York, New York 10006
(800) 523-2900
Attorneys for Plaintiff



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CELIA KATZ, Individually, and as Administratrix : of the Estate of MICHAEL KATZ 340 Harrison Avenue Elkins Park, PA 19027 | CIVIL ACTION NO. |
| Plaintiff, : | |
| v. | JURY TRIAL DEMANDED |
| MICHAEL D. LANIGAN, MD, 7002 Kennedy Blvd. West New York, New Jersey 07093 : | |
| MITCHELL S. STRAND, MD, 97 Random Farms Drive Chappaqua, New York 10514 : | |
| ELLIOTT MAYEFSKY, MD, 75 Brookshire Drive Goshen, New York 10924 : | |
| CLEVELAND W. LEWIS, JR. MD, 2 Gala Drive Newburgh, New York 12550 : | |
| and : | |
| ORANGE REGIONAL MEDICAL CENTER, 4 Harriman Drive Goshen, New York 10924 : | |
| Defendants. : | **COMPLAINT** |

## The Parties

1.      The Plaintiff in this case is Celia Katz who, at all times material hereto, was and is a citizen of the Commonwealth of Pennsylvania residing at 340 Harrison Avenue, Elkins Park, PA 19027. The Plaintiff, Celia Katz, is the widow of Dr. Michael Katz, deceased, and Plaintiff has been appointed Administratrix of the Estate of Michael Katz.

2.      The Defendant Michael D. Lanigan, MD is a physician duly licensed to practice medicine within the State of New York. At all times material hereto, Dr. Lanigan was and is a citizen of the State of New Jersey residing, upon information and belief, at 7002 Kennedy Blvd., West New York, New Jersey 07093.

3.      The Defendant Mitchell Strand, MD is a physician duly licensed to practice medicine within the State of New York. At all times material hereto, Dr. Strand was and is a citizen of the State of New York residing, upon information and belief, at 97 Random Farms Drive, Chappaqua, NewYork 10514.

4.      The Defendant Elliott Mayefsky, MD is a physician duly licensed to practice medicine within the State of New York. At all times material hereto, Dr. Mayefsky was and is a citizen of the State of New York residing, upon information and belief, at 75 Brookshire Drive, Goshen, New York 10924.

5.      The Defendant Cleveland W. Lewis, Jr., MD is a physician duly licensed to practice medicine within the State of New York. At all times material hereto, Dr. Lewis was and is a citizen of the State of New York residing, upon information and belief, at 2 Gala Drive, Newburgh, New York 12550.

6.      Defendant Orange Regional Medical Center is a non-profit corporation organized and existing pursuant to the laws of the State of New York with its principal place of business located at 4 Harriman Drive, Goshen, New York 10924. As such, this Defendant is a citizen of the State of New York.

## JURISDICTION AND VENUE

7.      Jurisdiction over this controversy is invoked pursuant to 28 U.S.C. 1332 since the Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

8.      Venue is proper since the treatment and care that are the subject of this litigation occurred within the jurisdiction of this district court.

## GENERAL ALLEGATIONS

9.      On June 22, 2007, Dr. Michael Katz died following a motor vehicle accident which occurred on June 21, 2007 in Otisville, New York.

10.      On July 9, 2007, Celia Katz was granted Letters of Administration for the Estate of Michael Katz, deceased, by the office of the Register of Wills of Montgomery County, Pennsylvania, where the decedent resided at the time of his death on June 22, 2007.

11.      On June 21, 2007, at approximately 4:34 p.m. Plaintiff's decedent, Dr. Michael Katz, was lawfully operating his 2002 Yamaha Motorcycle in Otisville, New York.

12.      While lawfully proceeding along State Street is Otisville, decedent's motorcycle struck a car owned and operated by Albert A. Munsch, Jr. who made a left turn in front of decedent causing an accident that resulted in serious injury to Dr. Katz.

13.      As a result of the injuries which Plaintiff's decedent sustained in the foregoing accident, Plaintiff's decedent was transported to the Orange Regional Medical Center, Elizabeth

A. Horton Memorial Hospital (sometimes hereinafter referred to as "Horton"), in Middletown, New York by the Otisville Ambulance.

14.     While enroute to Horton, a paramedic accompanying the Otisville Ambulance spoke with Horton Emergency Room personnel and advised them of the condition of Plaintiff's decedent who was while enroute to the hospital in hemorrhagic shock.

15.     Plaintiff's decedent arrived at the Horton emergency room at 5:09 p.m.

16.     Upon arrival at Horton, Plaintiff's decedent was examined by emergency room physician Michael Lanigan, M.D. at 5:20 p.m. who entered into a physician-patient relationship with Dr. Katz, but failed to note or appreciate the severity of Dr. Katz's injuries, who failed to request emergent general and chest surgical consults and/or who failed to arrange for the immediate transfer of Dr. Katz to a facility that could provide a "higher level of care" to Dr. Katz.

17.     At approximately 5.40 p.m., Dr. Lanigan transferred responsibility for Dr. Katz's care to Mitchell Strand, M.D., another emergency room physician at Horton Hospital, who, in turn, entered into a physician patient relationship with Dr. Katz.

18.     At approximately 5:41 and 5:44 p.m., Dr. Katz underwent numerous radiological studies that revealed that Dr. Katz had suffered multiple fractures and internal injuries including, but not limited to, a dislocation of his proximal femur, a comminuted fracture of the acetabulum and the left superior public ramis as well as multiple left rib fractures. During that time frame, Dr. Katz underwent several laboratory tests which indicated, or should have indicated, to Dr. Strand that Dr. Katz was in hemorrhagic shock.

19.     At approximately 6:00 p.m., Dr. Katz became less responsive, a trauma code was called and Dr. Katz was intubated.

20.    At that time, Dr. Strand called Dr. Elliott Mayefsky, a general surgeon, and Dr. Cleveland Lewis, the Director of Thoracic Surgery at Horton Hospital.

21.    Although Dr. Katz's respiratory failure required emergent intubation at approximately 6:00 p.m., neither Dr. Strand nor Dr. Mayefsky nor Dr. Lewis recommended, at that time, emergent transfer of Dr. Katz to a trauma center that could provide a "higher level of care" to him.

22.    At approximately 6:00 p.m. a chest tube was incorrectly inserted into Dr. Katz, and at 6:40 p.m. the chest tube was correctly reinserted and the drainage of blood at that time was significant.

23.    At approximately 6:50 p.m., Dr. Mayefsky entered into a physician patient relationship with Dr. Katz when he examined Dr. Katz and noted: "Impression: severe chest and pelvic trauma." As a result, Dr. Mayefsky recommended transfer to a Trauma Center.

24.    Notwithstanding the foregoing recommendation, Dr. Katz was not transferred, at that time, to a Trauma Center.

25.    At approximately 6:53, Dr. Katz underwent additional radiologic studies, at which point, in addition to the fractures previously noted, a hemopneumothorax with slight mediastinal shifting and a large air fluid level in the chest were observed.

26.    At approximately 7:00 p.m., Dr. Strand again spoke with Dr. Lewis and advised him that Dr. Katz's chest tube drainage had increased significantly.

27.    Based upon these findings, Dr. Lewis also recommended that Dr. Strand transfer Dr. Katz to a facility that could provide a "higher level of care."

28.    Despite the fact that Dr. Katz was *in extremis*, i.e. was intubated, required a chest tube, had drained a significant amount of blood from his chest, remained hypotensive, tachycardic, tachypenic, hypoxic, cool, pale and confused - all symptoms of hemorrhagic shock,

no arrangements were made by Defendants, at that time, to transfer Dr. Katz to a facility that could provide a "higher level of care."

29.    By approximately 7:30 p.m., the drainage of blood from Dr. Katz's chest was so significant that it met the established criteria for an emergency thoracotomy.

30.    Dr. Lewis was again informed by telephone of Dr. Katz's deteriorating condition. As a result, he once again recommended transfer. However, despite Dr. Katz's emergent condition, he did not promptly report to the hospital to examine and treat Dr. Katz.

31.    At approximately 8:00 p.m., a trauma transfer team was in Horton's emergency room ready to transfer Dr. Katz to the Westchester Medical Center.

32.    At that time, Dr. Strand, apparently for the first time, contacted the trauma center at the Westchester Medical Center to advise the Trauma Center that Dr. Katz was being transferred to the Westchester Medical Center for follow up care.

33.    According to Dr. Katz's chart from Horton Hospital, Dr. Strand reported that a resident at Westchester Medical Center apparently refused the transfer despite the fact that the physicians at Horton were apparently unable to adequately treat Dr. Katz.

34.    According to Dr. Katz's chart from Horton Hospital, sometime prior to 9:10 p.m., Dr. Lewis, rather than going to Horton to examine and/or treat Dr. Katz who was *in extremis*, allegedly called the trauma attending physician at Westchester Medical Center and again asked for permission to transfer Dr. Katz.

35.    According to the Dr. Katz's Horton Hospital chart, the trauma team at the Westchester Hospital again allegedly refused the transfer until such time as Dr. Lewis examined Dr. Katz.

36.    At approximately 9:10 p.m., nearly four hours after Dr. Katz arrived in the Emergency Room at Horton Hospital and more than three hours after Dr. Lewis was first called,

Dr. Lewis arrived at the Horton Emergency Room, entered into a physician patient relationship with Dr. Katz and then examined Dr. Katz.

37.    At approximately 9:30 p.m., the trauma transfer team was called back to the Emergency Room to transfer Dr. Katz to the Westchester Medical Center.

38.    At approximately 10:35 P.M, Dr. Katz was transferred by land ambulance from the Orange Regional Medical Center Horton Hospital to the Westchester Medical Center arriving 55 minutes later at 11:30 p.m.

39.    By the time Dr. Katz was finally transferred at 10:35 p.m., more than five hours after arriving at the Horton Emergency Room, he had lost at least 2500 ccs of blood, was suffering from metabolic acidosis, renal failure and hypothermia and his lower extremities were moteled.

40.    Dr. Katz suffered cardiac arrest within minutes of his arrival at the Westchester Medical Center as a result of his massive blood loss and associated metabolic acidosis.

41.    Despite being resuscitated at the Westchester Medical Center, Dr. Katz died at 2:15 a.m. on June 22, 2007.

42.    The death of Dr. Michael Katz on June 22, 2007 was jointly and severally caused by the negligence and carelessness of Dr. Michael Lanigan, Dr. Mitchell Strand, Dr. Elliott Mayefsky and Dr. Cleveland Lewis, each of whom owed a duty to Dr. Katz to provide him with the appropriate professional care and each of whom deviated from accepted medical standards during the course of their treatment and care of Dr. Michael Katz on June 21, 2007.

43.    The negligence, carelessness, unskillfullness of and the improper treatment and care by Dr. Lanigan which constituted a deviation from accepted medical standards included, but was not limited to, the following:

　　　　a.    Failing to note and/or appreciate the severity of Dr. Katz's injuries;

b.      Failing to recognize that Dr. Katz was displaying symptoms suggestive of hemorrhagic shock;

c.      Failing to timely diagnose and treat Plaintiff's decedent for the medical condition caused by the injuries that he received in his motor vehicle accident;

d.      Failing to recognize that Dr. Katz's symptoms of hypotension, tachycardia, tachypnea, hypoxia and confusion were likely caused by a severe vascular injury which could be life threatening if not promptly treated;

e.      Failing to request emergent general and chest surgical consults;

f.      Failing to arrange for the immediate transfer of Dr. Katz to a trauma center which could provide a higher level of care to Dr. Katz;

g.      Failing to promptly arrange for the blood transfusions; and

h.      In such other particulars as may be determined from discovery in this action.

44.     In the event Dr. Lanigan rapidly began to resuscitate Dr. Katz initiating blood transfusions and emergently summoning the "on call" general and chest surgeons to examine Dr. Katz, and/or if there were no "on call" surgeons qualified to treat Dr. Katz, then arranged for the emergency transfer of Dr. Katz to a facility that could provide a higher level of care, then more likely than not Dr. Katz would have survived his injuries. Dr. Lanigan's deviation from the standard of care for emergency room physicians deprived Dr. Katz of any chance for appropriate therapy and survival and resulted in his wrongful death.

45.     The negligence, carelessness and unskillfullness of and the improper treatment and care by Dr Strand which constituted a deviation from accepted medical standards included, but was not limited to, the following:

a.      Failing to note and/or appreciate the severity of Dr. Katz's injuries;

b.      Failing to recognize that Dr. Katz was displaying symptoms suggestive of hemorrhagic shock;

8

c.    Failing to recognize that Dr. Katz's symptoms of hypotension, tachycardia, tackypenia, hypoxia and confusion likely caused by a severe vascular injury which could be life threatening if not promptly treated;

d.    Failing to request and insist upon emergent general and chest surgical consults;

e.    Failing to recognize or have the knowledge to recognize his inability and lack of skill to treat Plaintiff's decedent when he knew or should have known of the foreseeable consequences of his inability to properly and skillfully provide Plaintiff's decedent with acceptable medical care and treatments;

f.    Failing to promptly arrange for the immediate transfer of Dr. Katz to a trauma center which could provide a higher level of care to Dr. Katz;

g.    Failing to promptly arrange for a blood transfusions;

h.    Failing to possess and exercise that degree of skill, training and care as is possessed and exercised by members of the emergency medical profession;

i.    Failing to insist that Dr. Lewis, a board certified thoracic surgeon, immediately examine Dr. Katz;

j.    Failing to take any steps to control or reduce Dr. Katz's internal bleeding and blood loss;

k.    Failing to provide a sufficient quantity of new blood to replace the known blood lost by Dr. Katz;

l.    Failing to properly insert the first chest tube;

m.    Failing to insert a second chest tube when he knew that the first tube was not adequately re-inflating Dr. Katz's collapsed lung;

n.    Failing to overrule the decision by a resident at Westchester Medical Center not to accept Dr. Katz and transfer Dr. Katz as soon as he realized that Dr. Katz could not be properly treated at Horton Hospital;

o.    Failing to arrange for Dr. Katz to be sent to another trauma center if Westchester Medical Center would not accept him;

p.    Failing to complete the EMTALA transfer certification process to facilitate the prompt transfer of Dr. Katz to a trauma center; and

q.    In such other ways as are determined during discovery in this case.

46.    In the event Dr. Strand began to rapidly resuscitate Dr. Katz initiating blood transfusions and emergently insisting that the "on call" general and chest surgeons examine Dr. Katz, and/or if there were no "on call" surgeons qualified to treat Dr. Katz, then arranging for the emergency transfer of Dr. Katz to a facility that could provide a higher level of care, then more likely than not Dr. Katz would have survived his injuries. Dr. Strand's deviation from the standard of care for emergency room physicians deprived Dr. Katz of any chance for appropriate therapy and resulted in his wrongful death.

47.    The negligence, carelessness, unskillfullness of and the improper treatment by Dr. Mayefsky which constituted a deviation from accepted medical standards included, but was not limited to, the following:

a.    Failing to assist Dr. Strand in arranging the emergent transfer of Dr. Katz to another facility that would provide a higher level of care to Dr. Katz;

b.    Failing to insist that Westchester Medical Center accept the transfer of Dr. Katz;

c.    Failing to take any steps that would help control, if not reduce, Dr. Katz's internal bleeding and blood loss pending transfer;

d.    Failing to complete the appropriate EMTALA transfer certificate to facilitate the prompt transfer Dr. Katz if he was deemed to be unstable as the Westchester Medical Center resident claimed; and

e.    In such other ways that are determined during discovery in this case.

48.    In the event Dr. Mayefsky promptly arranged for the emergency transfer of Dr. Katz to a facility that could provide a higher level of care, and in the interim, took steps to control, if not reduce, Dr. Katz's internal bleeding and blood loss, then more likely than not Dr. Katz would have survived his injuries. Dr. Mayefsky's deviation from the standard of care for general surgeons deprived Dr. Katz of any chance for appropriate therapy and survival and resulted in his wrongful death.

10

49.     The negligence, carelessness, unskillfullness of and the improper treatment and care by Dr. Lewis which constituted a deviation from accepted medical standards included, but was not limited to, the following:

a.     Failing to note and/or appreciate the severity of Dr. Katz's injuries;

b.     Failing to recognize that Dr. Katz was displaying symptoms suggestive of hemorrhagic shock;

c.     Failing to recognize that Dr. Katz's symptoms of hypotension, tachycardia, tackypenia, hypoxia and confusion likely caused by a severe vascular injury which could be life threatening if not promptly treated;

d.     Failing to timely report to the Horton Hospital Emergency Room when he learned of the severity of Dr. Katz's injuries at 6:00 p.m. and again at 7:00 and 7:30 p.m.

e.     Failing to arrange for the immediate transfer of Dr. Katz to a trauma center which could provide a higher level of care to Dr. Katz;

f.     Failing to overrule the decision by a surgical resident at Westchester Medical Center not to accept Dr. Katz and insist that the Westchester Medical Center accept Dr. Katz for treatment;

g.     Failing to arrange for Dr. Katz to be sent to another trauma center if Westchester Medical Center would not accept him;

h.     Failing to take any steps to control or reduce Dr. Katz's internal bleeding pending transfer;

i.     Failing to provide a sufficient quantity of new blood to replace the known blood lost by Dr. Katz

j.     Failing to complete the EMTALA certification process to facilitate the prompt transfer of Dr. Katz to a trauma center.

k.     Failing to assist Dr. Strand in arranging the emergent transfer of Dr. Katz to another facility that would provide a higher level of care to Dr. Katz; and

l.     In such other and further ways as are determined during discovery.

50.     In the event Dr. Lewis promptly reported to the Horton Hospital emergency room when he learned of the severity of Dr. Katz's injuries and/or in the event that Dr. Lewis timely

11

arranged for the emergency transfer of Dr. Katz to a facility that could provide a higher level of care, and/or in the event that Dr. Lewis undertook steps to control if not reduce Dr. Katz's internal bleeding and blood loss before transfer, then more likely than not Dr. Katz would have survived his injuries. Dr. Lewis' deviation from the standard of care for thoracic surgeons deprived Dr. Katz of any chance for appropriate therapy and survival and resulted in his wrongful death.

51.     In addition to the foregoing, the death of Dr. Katz on June 22, 2007 was also caused jointly and severally by the negligence, carelessness and EMTALA violations of Defendants Orange Regional Medical Center.

52.     At all times relevant to this action and specifically on June 21, 2007, Defendant Orange Regional Medical Center, by and through its agents, officers and/or employees held itself out to be skilled in the treatment and care of various injuries including those sustained in motor vehicle accidents.

53.     Defendant, Orange Regional Medical Center, by and through the agents, servants and employees, deviated from accepted medical standards and violated EMTALA in the following ways:

   a.     Failing to maintain an appropriately staffed emergency room;

   b.     Failing to establish appropriate protocols indicating when patients should be transferred to a Trauma Center;

   c.     Failing to establish and enforce an appropriate "on call" policy that would provide the necessary additional medical care to patients who are brought to its Emergency Room for treatment of injuries caused by motor vehicle accidents;

   d.     Failing to timely provide either the treatment and care required to stabilize Dr. Katz or timely transfer Dr. Katz to a Trauma Center if its emergency department and surgical staff did not have the capability to properly treat Dr. Katz;

e.    Failing to provide an adequate and competent medical staff for the care of trauma patients;

f.    Failing to provide adequate supervisory oversight over its emergency room and "on call" procedures;

g.    Failing to adopt and implement appropriate policies and procedures for the care of trauma patients;

h.    Failing to select, employ and/or retain only competent medical and nursing staff to practice within its facilities; and

i.    Failing to make appropriate arrangements and agreements with Trauma Centers in the Hudson Valley Region;

j.    In such other particulars as are determined during the course of discovery.

54.    The foregoing inactions or omissions placed Dr. Katz's health in serious jeopardy ultimately leading to his death, and, as a result, Defendant, Orange Regional Medical Center is also jointly and severally liable to the Plaintiff for the death of Dr. Katz.

55.    In addition to the foregoing agents, servants and employees of Defendant, Orange Regional Medical Center removed and converted the wedding ring which Plaintiff gave to her husband causing Plaintiff significant emotional distress.

56.    As a direct and proximate result of the negligence and other liability producing conduct of each of the Defendants in this action, Plaintiff's decedent, Dr. Michael Katz, died on June 22, 2007.

## COUNT I

### Celia Katz, as Administratrix of the Estate of Michael Katz v. All Defendants (Wrongful Death)

57.    Plaintiff repeats and incorporates paragraphs 1-56 by reference as though each were fully set forth at length herein.

58.    As a result of the Defendants' negligence and breaches of the duties owed to Plaintiff's decedent, Dr. Michael Katz died.

13

59.    Plaintiff's decedent, Dr. Michael Katz did not bring any action during his lifetime nor has any other action for the death of Plaintiff's decedent been commenced by Plaintiff herein.

60.    Plaintiff brings this action pursuant to 42 Pa. C.S. § 8301, also known as the Wrongful Death Act.  Plaintiff brings this action on behalf of herself and her children Philip, Seth, Eli and Jonah and claims all damages against Defendant that are recoverable under the Wrongful Death Act including, but not limited to, the value of the companionship, services, guidance, comfort, tutelage, solace, protection and assistance that decedent would have provided to his wife and children had he lived.

61.    As a direct and proximate result of the negligence and carelessness of the Defendant, Plaintiff and her children have been and will be deprived of the financial contributions which they would have received from decedent, Michael Katz, had he lived, for which she makes a claim against the Defendants under the Pennsylvania Wrongful Death Act.

62.    As a direct and proximate result of the negligence and carelessness of each of the Defendants, Plaintiff has been obliged to spend large sums of money for medical, hospital, funeral and other expenses incurred in connection therewith.

WHEREFORE, Plaintiff, Celia Katz, as Administratrix of the Estate of Michael Katz, demands judgment in her favor and against each Defendant for compensatory damages in an amount in excess of $75,000 together with the costs of prosecuting this action.

### COUNT II
### Celia Katz, as Administratrix of the
### Estate of Michael Katz v. All Defendants
### (Survival Action)

63.    Plaintiff repeats and incorporates by reference paragraphs 1-62 above by reference as though each were fully set forth at length herein.

14

64.   Plaintiff, Celia Katz also brings this action pursuant to 42 Pa. C.S. § 8302, which is known as the Survival Act, and she claims all damages recoverable under the Survival Act.

65.   As a result of the death of decedent, Dr. Michael Katz, his Estate has been deprived of the economic value of the decedent's life during the period of his life expectancy, and Plaintiff, Celia Katz, as Administratrix of the Estate of Michael Katz, claims damages for the economic loss suffered by the decedent's Estate as a result of Defendants' negligence and other liability producing conduct.

66.   As a further direct and proximate result of the negligence and carelessness and other liability producing conduct of the Defendants, Plaintiff's decedent experienced conscious pain and suffering, shock and anguish up to and including the time of his death, and Plaintiff makes a claim herein for such damages as would compensate the Estate of Michael Katz for these damages as well.

WHEREFORE, Plaintiff, Celia Katz, as Administratrix of the Estate of Michael Katz, deceased, demands judgment in her favor and against each Defendant for compensatory damages in an amount in excess of $75,000 together with the costs of prosecuting this action.

## COUNT III

### Celia Katz, individually v.
### Orange Regional Medical Center
### (Conversion and Intentional Infliction of Mental Duress)

67.   Plaintiff repeats and incorporates by reference paragraphs 1 – 66 above as if each were fully set forth at length herein.

68.   The removal and conversion of the wedding ring that Plaintiff gave to her husband while Plaintiff's decedent was unconscious at Horton Hospital caused Plaintiff to experience increased emotional suffering, compounding the grief which she suffered as a result of the loss of her husband and constituted the intentional infliction of mental duress.

15

WHEREFORE, Plaintiff, Celia Katz, individually and as Administratrix of the

Estate of Michael Katz, deceased, demands judgment in her favor and against Defendant Orange

Regional Medical Center for compensatory damages in an amount in excess of $75,000 together

with the costs of prosecuting this action.

COZEN O'CONNOR

BY: _____

CHRISTOPHER C. FALLON, JR., ESQ. (CF9482)
45 Broadway Atrium
New York, NY   10006
(Tel.) 1-800-523-2900
Attorneys for Plaintiff

COZEN O'CONNOR
CHRISTOPHER C. FALLON, JR. (CF 9482)
45 Broadway, 16th Floor
New York, New York 10006
(800) 523-2900
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CELIA KATZ, Individually, and as Administratrix | : | CIVIL ACTION |
| of the Estate of MICHAEL KATZ | : | NO. |
| 340 Harrison Avenue | : | |
| Elkins Park, PA 19027 | : | |
| | : | |
| Plaintiff, | : | JURY TRIAL DEMANDED |
| | : | |
| v. | : | |
| MICHAEL D. LANIGAN, MD, | : | |
| 7002 Kennedy Blvd. | : | |
| West New York, New Jersey 07093 | : | |
| | : | |
| MITCHELL S. STRAND, MD, | : | |
| 97 Random Farms Drive | : | |
| Chappaqua, New York 10514 | : | |
| | : | |
| ELLIOTT MAYEFSKY, MD, | : | |
| 75 Brookshire Drive | : | |
| Goshen, New York 10924 | : | |
| | : | |
| CLEVELAND W. LEWIS, JR. MD, | : | |
| 2 Gala Drive | : | |
| Newburgh, New York 12550 | : | |
| | : | |
| and | : | |
| | : | |
| ORANGE REGIONAL MEDICAL CENTER, | : | |
| 4 Harriman Drive | : | |
| Goshen, New York 10924 | : | |
| | : | |
| Defendants. | : | |

**CERTIFICATE PURSUANT TO CPLR SECTION 3012-a**

COMMONWEALTH OF PENNSYLVANIA    )
                                          ss:

COUNTY OF PHILADELPHIA              )

        CHRISTOPHER C. FALLON, JR., being duly sworn, deposes and says:

                a.      I am an attorney duly licensed in the State of New York and a member of

the firm, Cozen O'Connor, P.C., attorneys for the Plaintiff in the above action.


                b.      This attorney has reviewed the facts of the case and has consulted with at

least one physician about the case and has concluded on the basis of such review and

consultation that there is a reasonable basis for the commencement of this action.

                                    _____
                                    CHRISTOPHER C. FALLON, JR.

Sworn to before me this 28TH
day of April, 2008

PHILADELPHIA\3272393\1  208590.000

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
JOANNE S. DILLON, Notary Public
City of Philadelphia, Phila. County
My Commission Expires August 28, 2011